**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| FELICIANO VELASCO ROJAS and LUIS GUZMAN ROJAS, | § § § | |
| Plaintiffs, | § | **CIVIL COMPLAINT** |
| v. | § | |
| | § | Civil Action |
| FIRST PICK FARMS LLC., FIRST PICK | § | No: 1:23-cv-00604 |
| FARMS MANAGEMENT, LLC., HB HIVE, | § | Hon. |
| LLC., GROW BLUE FARMS, LLC., GROW | § | |
| BLUE FARMS HOURLY, LLC., and GROW | | JURY TRIAL DEMANDED |
| BLUE FARMS SALARY, LLC., | | |
| Defendants. | | |

## PLAINTIFFS' CIVIL COMPLAINT

1.      Plaintiffs Feliciano Velasco Rojas and Luiz Guzman Rojas bring this civil action against Defendants First Pick Farms, LLC ("First Pick Farms"), First Pick Farms Management, LLC ("First Pick Farms Management"), HB Hive LLC, ("HB Hive"), and Grow Blue Farms, LLC ("Grow Blue Farms"), Grow Blue Farms Hourly, LLC ("Grow Blue Farms Hourly"), Grow Blue Farms Salary, LLC ("Grow Blue Farms Salary") (collectively "Defendants") for violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the Trafficking Victims Protection Act ("TVPA"), and the Trafficking Victims Protection Reauthorization Act of 2003 and 2008 ("TVPRA") for agricultural work done on Defendants' blueberry farms located in West Olive, Michigan during the summer of 2017 and for being trafficked to perform agricultural labor.

2.      Beginning in July of 2017 and continuing throughout the blueberry-growing season of the same year, Defendants violated multiple provisions of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801-1872 while Plaintiffs were employed at Defendants' blueberry farm as migrant agricultural workers.

3.     Defendants' employee transported Plaintiffs from North Carolina to Michigan and compelled their labor through threats of force and serious harm including economic harm and abuse of legal process. 18 U.S.C. § 1589. Plaintiffs, two Mexican citizens, were victims of labor trafficking, involuntary servitude and forced labor as defined by the TVPA, 18 U.S.C. §§1581 *et seq.*, and the TVPRA, 22 U.S.C. §7101.

4.     Defendants, through their agent and direct employee, Antonio Sanchez, recruited and transported Plaintiffs from their H-2A employment in North Carolina to work and reside at the Defendants' blueberry farm in West Olive, Michigan.

5.     Defendants compelled Plaintiffs to work under threat of abuse or threatened abuse of the legal process by compelling Plaintiffs' use of false immigration documentation and threatened to call immigration authorities if Plaintiffs complained to anyone, including other persons working at the Defendants' blueberry farm. These threats which compelled Plaintiffs to work for Defendants began prior to their arrival in Michigan and were made by Defendants' agent and employee, Antonio Sanchez.

6.     Upon Plaintiffs' arrival in Michigan, Defendants compelled Plaintiffs to work in grueling conditions picking blueberries as many as twelve hours per day without breaks, seven days per week and to live in employer-provided substandard housing.

7.     Plaintiffs seek redress from Defendants jointly and severally for Defendants' violations of law, in the form of statutory or actual damages under the AWPA, and actual damages plus reasonable attorneys' fees under the TVPA and TVPRA.

**JURISDICTION AND VENUE**

2

8.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 (federal question), the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1854(a) *et seq.*

9.      Pursuant to 18 U.S.C. § 1595 this Court has jurisdiction over civil claims brought by Plaintiffs for violations of the Trafficking Victims Protection Act ("TVPA") and the Trafficking Victims Protection Reauthorization Acts ("TVPRA").

10.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) as this is the judicial district where Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

### Migrant Worker Plaintiffs

11.     Plaintiff Luiz Guzman Rojas ("Plaintiff Guzman" or "Mr. Guzman") is a Mexican national and a migrant farmworker who currently resides in North Carolina.

12.     Plaintiff Feliciano Velasco Rojas ("Plaintiff Velasco" or "Mr. Velasco") is a Mexican national and a migrant farmworker who currently resides in Florida.

13.     Plaintiffs are from impoverished areas of Mexico where there are few opportunities for paid employment. Plaintiffs traveled to the United States at considerable personal expense to support their families.

14.     Plaintiff Guzman is an individual from the state of Michoacan, Mexico and was employed by the Defendants from approximately June 2017 to September 2017.

15.     Plaintiff Velasco is an individual from the state of Oaxaca, Mexico and was employed by the Defendants from approximately June 2017 to August 2017.

16.     At all times relevant to this Complaint, Plaintiffs Guzman and Velasco were migrant agricultural workers pursuant to the AWPA 29 U.S.C. § 1802 (8) and 29 C.F.R. § 500.20(p).

17.     In May of 2017 the Plaintiffs entered the United States through the H-2A visa program to work in North Carolina along with a number of other Mexican nationals.

18.     Plaintiffs worked on Defendants' blueberry farms in Michigan for one season from June 2017 through September of 2017 picking blueberries.

19.     While working for Defendants, Plaintiffs held permanent places of residence in Mexico.

20.      Plaintiffs were housed at a migrant housing facility located at 1941 Cleveland Avenue, Wyoming, Michigan, 49509 for the benefit of Defendants.

21.     At all times relevant to this action, Plaintiffs Guzman and Velasco were employed in agricultural employment under AWPA, 29 U.S.C. § 1802(3) and 29 C.F.R. §500.20(e), in that they were employed in the production, cultivation, growing, and harvesting of agricultural or horticultural commodities and/or in work incident to or in conjunction with Defendants' growing operations, including preparation for market.

## Defendants

22.     Defendant First Pick Farms, LLC. ("First Pick Farms") is a domestic corporate entity which operates a farm that markets and sells fresh and frozen blueberries throughout Michigan and operates under the name "First Pick Farms."

23.     Defendant First Pick Farms Management, LLC ("First Pick Farms Management") is a domestic corporate entity operating under the name "First Pick Farms" and affiliated with First Pick Farms.

24.     Defendant HB Hive, LLC ("HB Hive") is a domestic corporate entity operating under the name "First Pick Farms" and affiliated with First Pick Farms.

25.     Defendant Grow Blue Farms, LLC ("Grow Blue Farms") is a foreign corporate entity operating under the name "First Pick Farms" and affiliated with First Pick Farms.

26.     Defendant Grow Blue Farms Hourly, LLC ("Grow Blue Farms Hourly") is a domestic corporate entity operating under the name "First Pick Farms" and affiliated with First Pick Farms.

27.     Defendant Grow Blue Farms Salary, LLC ("Grow Blue Farms Salary") is a domestic corporate entity operating under the name "First Pick Farms" and affiliated with First Pick Farms.

28.     All six Defendants: First Pick Farms, First Pick Farms Management, HB Hive, and Grow Blue Farms, Grow Blue Farms Hourly, and Grow Blue Farms Salary, (collectively "First Pick" or "Defendants"), are all registered and operate out of the 14786 Winans St., West Olive, Michigan, 49460 address.

29.     Upon information and belief, First Pick Farms maintains its headquarters, production facility, and distribution centers at 14786 Winans St., West Olive, Michigan, 49460.

30.     Defendants, save for Defendant Grow Blue Farms, are all Michigan for-profit corporations qualified to operate in Michigan.

31.     Defendant Grow Blue Farms is a Delaware corporation qualified to operate in Michigan.

32.     Defendants operate blueberry farm operations at 14786 Winans St., West Olive, Michigan, 49460 where they produce fresh and frozen blueberries.

33.     Defendant Grow Blue Farms owns, operates, controls and/or contracts for migrant housing in Van Buren, Oceana, Berrien, and Ottawa counties in Michigan for its workforce.

34.     Defendants housed Plaintiffs at 1941 Cleveland Avenue, Wyoming, MI.

35.     Defendants First Pick Farms are a single employer under the AWPA as they are an integrated enterprise.

36.     Defendants share the same officers and directors, including Registered Agent Jennifer Crawford and President Scott Nagelvoort.

37.     At all times relevant to this Complaint, Defendants were employers of Plaintiffs under the AWPA, 29 U.S.C. § 1802 (5), which determined the terms and conditions of Plaintiffs' employment, including their work hours, schedules, manner of performance, timekeeping, and housing, among other essential functions of an employer.

38.     Specifically, at all relevant times, Defendants' employees regularly and recurrently handled or otherwise worked on goods moved in or produced for commerce, including but not limited to, harvesting blueberries for sale; and Defendants' annual gross volume of sales or business was not less than Five Hundred Thousand Dollars ($500,000.00).

39.     At all times relevant to this action, Defendants were agricultural employers under AWPA, 29 U.S.C. § 1802(2), in that they owned or operated a farm, packing shed and/or nursery, and hired and employed the Plaintiffs and others as migrant or seasonal agricultural workers.

**FACTUAL ALLEGATIONS**

**<u>Trafficking</u>**

A.  <u>Recruitment and Trafficking</u>

40. Plaintiffs were H-2A agricultural workers from Mexico working on a farm in North Carolina prior to the blueberry season of 2017.

41. After arriving in North Carolina and working on a farm there for a few weeks, Antonio Sanchez woke the Plaintiffs and approximately thirty other H-2A workers in the middle of the night to take their photographs.

42. After working at a farm in North Carolina, Plaintiffs and several other H-2A workers were told by Defendants' agent and employee, Antonio Sanchez, that they would be taken to another farm to continue agricultural work in Michigan.

43. Defendants, through their agent and employee Antonio Sanchez, repeatedly threatened Plaintiffs and the other H-2A workers with calls to immigration authorities if they complained to anyone regarding being transported to Michigan to work.

44. Soon thereafter, Antonio Sanchez rounded up the individuals who he had photographed, required them to board vans, gave them false identification that had their respective photographs and other false identification information, and then told them that they were being relocated to a farm in Michigan where they would use the identity documents that he provided to them.

45. Plaintiffs and other H-2A workers were given false identification and forced to board a bus and were driven to West Olive, Michigan by Antonio Sanchez where they would work for the Defendants.

46. Plaintiff Guzman was given false identification documents with the name "Saul Chabez".

47. Plaintiff Velazco was given false identification documents with the name "Juan Guzman."

48.    Antonio Sanchez orchestrated the transportation of the Plaintiffs and the other individuals to Michigan while also charging them for the transportation costs.

49.    In order to repay Antonio Sanchez for the aforementioned costs the Plaintiffs and other workers had to repay the debt imposed with their own money and labor.

50.    When Plaintiffs, the other H-2A workers, and Antonio Sanchez arrived in Michigan, Antonio Sanchez took them to a house located at 1941 Cleveland Avenue, Wyoming, Michigan, where the workers resided for the duration of the 2017 blueberry season.

51.     The house at 1941 Cleveland Avenue, Wyoming, Michigan was unfurnished with insufficient space for the thirty workers that were to reside there for the entirety of the 2017 blueberry season.

52.    On Defendants' premises in Michigan, Defendants processed Plaintiffs' employment paperwork using the false identification provided to them by Antonio Sanchez.

53.    Defendants employed and directed Antonio Sanchez with the duty to staff Defendants' workforce in Michigan.

54.    Defendants knowingly trafficked the Plaintiffs through the use of force, fraud, and/or coercion for the purpose of bringing a work crew to Defendants' blueberry farm.

B.  Defendants' Involvement in the Labor Trafficking

55.    The Defendants hired and employed Antonio Sanchez during the 2017 blueberry season to act as field supervisor as they had done in previous seasons.

56.    As an agent of the Defendants', Antonio Sanchez's actions as an agricultural recruiter and field supervisor are imputed wholly onto the Defendants' business operations.

57.     Upon information and belief, the Defendants communicated with or had a standing agreement with Antonio Sanchez such that he would provide some number of agricultural workers to work in Michigan for the 2017 blueberry season.

58.     Defendants, as part of the hiring process for the 2017 blueberry season, had the new workers, including the Plaintiffs, fill out forms to verify their ability to work in the United States which used the false identities provided by Antonio Sanchez.

C.   Method of Control, Form of Threats, and Abuse

59.     Upon arriving in Michigan, Antonio Sanchez threatened the Plaintiffs and other workers by saying that the immigration authorities would be alerted if any workers raised any complaints.

60.     Antonio Sanchez repeated similar threats throughout the work season: that he would alert immigration authorities on the Plaintiffs' whereabouts and the use of false identification if the Plaintiffs complained about their working conditions.

61.     Due to being compelled to use the false identifying documentation and being transported away from their previous H-2A employer in North Carolina, thereby violating the terms of their H-2A visa and immigration status, the Plaintiffs were fearful of the legal repercussions if immigration authorities were called against them.

62.     Defendants' agent Antonio Sanchez instructed Plaintiffs to use the false identifications imposed on the Plaintiffs in filling out the paperwork to begin their employment for Defendants.

63.     Defendants reviewed and approved the employment documentation completed with the false identification documents imposed on the Plaintiffs by Antonio Sanchez and enrolled Plaintiffs in their company records under false aliases.

64.     Defendants compelled Plaintiffs to work as much as twelve hours per day, seven days per week under brutal conditions while repaying Antonio Sanchez for the debt that he had imposed on them for transportation from North Carolina.

65.      Defendants' agent, Antonio Sanchez, monitored Plaintiffs and the other workers to ensure that they did not divulge the details of the trafficking scheme including their true identities. This kept the Plaintiffs and other workers residing in that same house isolated and controlled by Antonio Sanchez, Defendants' agent and employee.

D.  <u>Financial Gain</u>

66.     Defendants, through the human trafficking initiated by their agent and employee, Antonio Sanchez, obtained a labor force for the picking of their blueberry harvest to their pecuniary gain.

67.     Defendants, with a larger workforce, were able to more quickly and effectively pick their crops and move them into the stream of commerce to their direct economic benefit.

68.     Defendants, through Antonio Sanchez, deducted Plaintiffs' wages for substandard housing which was of benefit to the employer. Antonio Sanchez charged travel expenses to the workers for transporting them from the employer provided housing to the fields where they worked for the benefit of the employer.

**Agricultural Employment**

69.     Agricultural workers have historically been exploited which is why the federal government passed the Migrant and Seasonal Agricultural Worker Protection Act to protect these susceptible groups of workers who travel long distances to pick the fruits and vegetables that form so much of the food supply.

70.     The AWPA defines an agricultural employer as "any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed, nursery, or seed production enterprise who recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers." 29 U.S.C. §1802(2).

71.     The AWPA defines a seasonal agricultural worker as an "individual employed in 'agricultural employment' (29 C.F.R. §500.20(e)) of a seasonal or other temporary nature (29 C.F.R. §500.20(s)) required to be absent overnight from his/her permanent place of residence (29 C.F.R. §500.20(p)(2)).

72.     The AWPA defines agricultural employment broadly to include farming in all its branches, including the growing and harvesting of any agricultural or horticultural commodity which are those commodities which use agricultural techniques for cultivation, even if the commodity could be produced without human intervention.

73.     During the relevant time periods, Defendants have grown and harvested blueberries on their premises.

74.     Defendants have directly recruited and hired workers and used their own employees to act as farm labor contractors to recruit and hire workers in order to grow and harvest crops on their West Olive, Michigan farm.

75.     Defendants employed workers for whom they provided or contracted for provision of nearby housing.

76.     Defendants hired Antonio Sanchez as a field supervisor during the 2017 blueberry season. Defendants had hired Antonio Sanchez in prior years to provide a crew for previous blueberry seasons.

77.     While Plaintiffs were lawfully working as H-2A workers at another farm in North Carolina, Antonio Sanchez ordered and transported Plaintiffs along with other workers to Michigan to pick blueberries.

78.     After preparing false identification for Plaintiffs, Antonio Sanchez drove Plaintiffs and thirty other now-former H-2A workers from North Carolina to Michigan.

79.     Antonio Sanchez told the workers prior or during the trip to Michigan that he would charge the workers for the costs of transporting them from North Carolina to Michigan which included the costs of the false identification imposed on the Plaintiffs and other trafficked workers; the costs of creating the false identification documents which was approximately $110 per worker, and charged  trip fuel costs for each passenger  in the amount of Twenty Five Dollars ($25.00) each per refueling stop.

80.     Upon arriving in Michigan, Antonio Sanchez told Plaintiffs and other workers that they would be placed in a house located at 1941 Cleveland Avenue, Wyoming, Michigan and told them that they would each have to pay rent in the amount of Twenty Dollars ($20.00) per week.

81.     Plaintiffs lived in a residential home with over thirty workers all sharing living space.

82.     Defendants' housing provided to Plaintiffs was unfurnished and could not reasonably accommodate the more than thirty people who resided there. Two women workers were given a bedroom to share while the remaining workers had to spread out throughout the rest of the house with no other options but to sleep on the floor. The house only contained two bathrooms and one kitchen for the more than thirty workers to share. Each bathroom could

only accommodate one person at a time. The kitchen was modest in size and did not have capacity for all workers to have meaningful access to it.

83.     Defendants failed to provide adequate housing to their blueberry workers when it placed the Plaintiffs and other workers in an unfurnished, dilapidated, and overcrowded house wherein the workers had to sleep on the floor.

84.     Prior to Plaintiff's commencement of work at Defendants' blueberry farm, the Defendants required Plaintiffs and other trafficked former H-2A workers to fill out paperwork using their fake documentation as issued by Defendants' agent employee, Antonio Sanchez. The day after arriving in Michigan, the thirty trafficked workers were taken to an office or warehouse space at First Pick Farms where Defendants' secretarial or administrative staff called up the workers and asked the workers for their identification to fill out the employment paperwork which was the false identification they had been issued by Antonio Sanchez. After verifying the information and filling out the paperwork the workers were required to sign upon completion. This employment paperwork was reviewed by Defendants' secretarial or administrative staff. For some workers, their IDs were rejected, and those workers were told that they would need different identification and those workers then went to Antonio—who was standing outside of the office space; for other identification information to re-present to First Pick employees to re-fill and verify the employment paperwork.

85.     Defendants failed to provide written notices and disclosures prior to Plaintiffs beginning the 2017 blueberry season regarding employment and housing conditions to Plaintiffs.

86.     Antonio Sanchez coordinated with other employees of Defendants, including "Miguel" and "Pablo," to manage Plaintiffs' work in detail, including specific work locations, work schedule, and daily work review.

87.     Defendants made all decisions related to Plaintiffs' blueberry job assignments, which have included what location, crop, and rows they would be assigned to work in, and what specific tasks they would be assigned to complete.

88.     Defendants assigned Plaintiffs and the other blueberry workers their work schedules including controlling their starting and stop times.

89.     Defendants tracked the quantity of blueberries each Plaintiff picked by weight which is reflected in their wage statements.

90.     Defendants set and enforced production standards for Plaintiffs and blueberry workers and tracked each Plaintiff's piece rate for all crop-related tasks.

91.     Plaintiff Luis Guzman was also assigned to be one of the drivers that would transport some of the about thirty other workers co-habiting at the employer provided housing located at 1941 Cleveland Avenue, Wyoming, Michigan to the work site. Plaintiff Guzman did not have a United States driver's license during the 2017 blueberry season but was compelled to drive by Defendants as part of his work assignment.

92.     Defendants failed to provide adequate transportation for the Plaintiffs and other workers to get from their employer-provided housing to the work site and were unlawfully charged gas and transportation expenses.

93.     Defendants issued payments directly to Plaintiffs through their HB Hive payroll system with Defendants' full business contact information on each pay stub.

94.     Defendants failed to include the number of hours worked by each Plaintiff in each paystub as required under the AWPA (29 C.F.R. §500.80(a)(3)).

95.     Defendants failed to provide accurate records for wages paid to the Plaintiffs and the other blueberry workers as required under the AWPA (29 C.F.R. §500.80(d)).

96.     Defendants failed to provide notifications about workplace safety or worker rights at the locations where Plaintiffs were tasked with working as required under AWPA. (29 C.F.R. §500.135(a)(3)).

97.     Defendants prevented Plaintiffs from leaving the housing or work site and instructed Plaintiffs who they could and could not speak to, e.g. male workers were not to speak to or co-mingle with female workers.

98.     Following the 2017 blueberry season, on or about September 2017, Defendants transported Plaintiffs and other workers back to North Carolina where the workers finally managed to escape employer control.

<u>COUNT I</u>
**Violations of the TVPA – Forced Labor Against All Defendants**
**(18 U.S.C. §§1589)**

99.     Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

100.    Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106-386, 114 Stat. 1466 (2000) (codified as amendment in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code.) The TVPA has been reauthorized several times in the years since.  Through its text and legislative history,

Congress demonstrated a strong intent to provide a means of recovery for victims of labor exploitation by allowing them to pursue civil actions for human trafficking violations.

101.   The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. **§** 1590, *et seq.*, criminalizes labor trafficking, e.g. peonage, slavery, involuntary servitude, or forced labor. Separately §1595 of the TVPRA provides victims of labor trafficking with civil remedies against the perpetrators of human labor trafficking and also against the beneficiaries of labor trafficking. *See* 18 U.S.C. § 1595(a).

102.   18 U.S.C. § 1595(a) sets the standard for civil liability under the TVPRA. That section provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially, or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

103.   Under the 2003 version of the 18 U.S.C. § 1595(a), only those criminally liable under 1590 could be held civilly liable under 1595. However, in 2008, U.S.C. § 1595(a) was intentionally amended with substantially different language that created a category of defendants that could be held liable civilly even in the absence of criminal culpability. By amending 18 U.S.C. § 1595(a) in 2008, Congress required "whoever," (i.e. all businesses, including) to comply with the new law or face new civil liability. This amendment to the country's systemic human trafficking legislation necessitated an evolution from the business and commercial sector which for decades have enabled, empowered, harbored, held,

16

facilitated, benefitted from financially or otherwise, and/or any combination of the foregoing from labor trafficking.

104.   Under the TVPRA and the TVPA, any individuals and/or entities are civilly liable for a labor trafficking victim's damages if they: (1) knowingly benefitted; (2) from participating in a venture; (3) that they knew or should have known engaged in forced labor." 18 U.S.C. § 1595(a).

105.   It is a violation of the TVPA to "knowingly provide or obtain the labor or services of a person… by means of serious harm threats of serious harm…; by means of the abuse of threatened abuse of the law or legal process; or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm… 18 U.S.C. § 1589(a)

106.   The TVPA defines "serious harm" to include nonphysical harm, "including psychological, financial, or reputational harm, that is sufficiently serious… to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services to avoid incurring that harm. 18 U.S.C. 1589(c)(2).

107.   Defendants, through its employees including their field supervisor Antonio Sanchez, knowingly obtained the labor of Plaintiffs by threats of abuse of the legal process and restraint against the Plaintiffs and other persons.

108.   Defendants through their employees knowingly provided and/or obtained Plaintiffs' labor and services by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not perform such labor or services, Plaintiffs would suffer legal consequences, harm, or physical restraint.

109.   Defendants compelled Plaintiffs to work the blueberry fields for exorbitant hours by threatening abuse of the legal process.  Defendants exploited the Plaintiffs' vulnerability and directed, assisted, conspired, or acted in concert with each other to create and perpetuate a system of peonage and forced labor prohibited by 18 U.S.C. §1590.

110.   Defendants through its employees used threats of abusing the legal process, e.g., Antonio Sanchez threatened to call immigration authorities if Plaintiffs complained about the working conditions, which was a pattern of threats and abuse to cause Plaintiffs to believe that failure to obey would cause Plaintiffs and/or their families back in Mexico to suffer serious harm.

111.   Plaintiffs suffered and continue to suffer emotional distress and financial distress due to Defendants' coercive and fraudulent tactics resulting in their forced labor and trafficking.

112.   Plaintiffs are entitled to an award of compensatory and punitive damages, in an amount to be determined at trial, as well as reasonable attorney's fees, and costs for the wrongful conduct of Defendants.

## COUNT II
### Violations of the TVPA – Forced Labor Against All Defendants
### (18 U.S.C. §§1589(b))

113.   Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

114.   It is a violation of the TVPA to "knowingly benefit" from participation in a venture which obtains labor in violation of the TVPA, while "knowing or in reckless

disregard of the fact" that the venture has obtained labor through such means. 18 U.S.C.

1589(b)

115.    Defendants knew or were reckless in not knowing that their own employee and field supervisor, Antonio Sanchez, had used coerced transportation and threats of abuse of the legal system, physical harm, and restraint to traffic the Plaintiffs and other workers on Antonio Sanchez's crew to cause Plaintiffs to provide labor and services at Defendants' blueberry farm. Defendants through their employees kept the Plaintiffs controlled and overseen creating an air of fear.

116.    Defendants, through its employees, benefitted financially from the forced labor provided by Plaintiffs in working Defendants' blueberry farmlands.

117.    Plaintiffs suffered injuries and damages as a result of Defendants' actions.

118.    Plaintiffs are entitled to an award of compensatory and punitive damages, in an amount to be determined at trial, as well as reasonable attorney's fees, and costs for the wrongful conduct of Defendants.

### COUNT III
### Violations of the TVPA – Forced Labor Against All Defendants
### (18 U.S.C. §§1590(a))

119.    Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

120.    It is a violation of the TVPA to "knowingly, recruit, transport, provide, or obtain by any means, any person for labor or services in violation of" the TVPA.

121.    Defendants knowingly and purposefully recruited the Plaintiffs as described herein, in violation of the TVPA.

122.   Defendants knowingly and purposefully transported Plaintiffs in violation of the TVPA.

123.   Defendants knowingly and purposefully provided the labor of Plaintiffs as described herein, in violation of the TVPA.

124.   Defendants knowingly and purposefully obtained the labor of Plaintiffs as described herein, in violation of the TVPA.

125.   Plaintiffs suffered damages as a direct and proximate result of the Defendants' conduct. These damages include, but are not limited to, emotional distress damages.

126.   Plaintiffs are entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorney's fees and costs of this action.

**<u>COUNT IV</u>**
**Violations of the TVPA – Forced Labor Against All Defendants**
**(18 U.S.C. §§1594(a))**

127.   Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

128.   Attempts to violate the TVPA are themselves violations of the TVPA. 18 U.S.C. 1594(a).

129.   Defendants attempted to violate 18 U.S.C. 1589 and 1590 described herein.

130.   Plaintiffs suffered damages as a direct and proximate result of Defendants' conduct. These damages include, but are not limited to, emotional distress damages.

131.   Plaintiffs are entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorney's fees and the costs of this action.

## COUNT V

**Violations of the AWPA - Misrepresentation of terms and conditions
29 U.S.C. §1821(f)**

132.   Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

133.   At all times relevant to this Complaint, Defendants have constituted "agricultural employers" within the meaning of the AWPA. See 29 U.S.C. § 1802(2).

134.   At all times relevant to this Complaint, Plaintiffs have been "migrant agricultural worker[s]" within the meaning of 29 U.S.C. § 1802(8) and employed by Defendants.

135.   The AWPA creates a private right of action for any person aggrieved by a violation. *Id.* § 1854(a).

136.   Defendants violated the AWPA, 29 U.S.C. 1821(f), by providing false and misleading information to Plaintiffs concerning the terms, conditions, or existence of agricultural employment required to be disclosed.

137.   When Plaintiffs were forcibly transported from North Carolina to work for Defendants on their blueberry farm, Defendants failed to give information regarding the basis for their wages, piecework basis, numbers of hours to be worked, and withholdings.

138.   Defendants omitted the information required to be disclosed by the AWPA to migrant agricultural workers like the Plaintiffs and this omission was tantamount to a misrepresentation of the required disclosures.

139.   Plaintiffs have attempted to resolve this issue with Defendants by sending a demand letter to the address listed in Defendants' corporate filings on March 15, 2023 but have been unsuccessful to date.

**COUNT VI**
**Violations of the AWPA – Written Disclosures Requirement**
**29 U.S.C. §1821(a)(1-7)**

140.   Plaintiffs, who were or are migrants under the AWPA reallege and incorporate the allegations set forth above as if fully set forth herein.

141.   Defendants recruited Plaintiffs through their agent employee, Antonio Sanchez prior to each Plaintiff's commencement of work for Defendants.

142.   When transporting Plaintiffs from North Carolina to Michigan, Defendants' agent employee, Antonio Sanchez, only provided verbal information on their destination: Michigan, and the types of crops the Plaintiffs would be picking: blueberries.

143.    Pursuant to 29 U.S.C. § 1821, Defendants were required to provide written disclosures to Plaintiffs at the time of their recruitment, containing certain information about the conditions of their employment, including but not limited to; the place of employment, the crops and types of activities that the worker will be employed on; the wage rate to be paid; the period of employment and the entity to be informed if the worker suffers an on-the-job injury.

144.   At all times relevant to this Complaint, Defendants failed to provide Plaintiffs with the disclosures required by Section 1821 of the AWPA, either independently by themselves or through their agent employee.

145.    Plaintiffs have been harmed by Defendants' failure to act in this respect, as they have not been provided with the appropriate information necessary to ascertain whether they have been paid all the wages they have earned or to redress their underpayment of wages.

146.    Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

147.    Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

148.    Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

**COUNT VII**
**Violations of the AWPA – Violations of the recordkeeping requirements**
**29 U.S.C. §1821(d)**

149.    Plaintiffs, who were or are migrant under the AWPA, reallege the above paragraphs as though set forth fully herein.

150.    Pursuant to AWPA section 1821(d), each farm labor contractor, agricultural employer, and agricultural association which employs any migrant agricultural worker shall, with respect to each worker, make, keep, and preserve records for three years of the following information: basis on which wages are paid; number of piecework units earned; the number of hours worked; the total pay period earnings; the specific sums withheld and purpose of those withholdings; and net pay.

151.    Defendants issued Plaintiffs and maintained paystubs that do not include an accurate hourly rate as obligated by the Act.

152.    Defendants violated the following provisions of the AWPA with respect to their obligations to provide recordkeeping with regard to the hours worked by migrant agricultural workers such as the Plaintiffs.

153.    Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

154.    Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

155.    Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

## COUNT VIII
### Violations of the AWPA – Violations of the transportation requirements
### 29 U.S.C. §1841(b)(1)(A), §1841(b)(1)(B), and §1841(b)(1)(C)

156.    Plaintiffs, who were migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

157.    Plaintiff Luis Guzman was obligated by Defendants' agent employee Antonio Sanchez, to drive a van to transport workers from their employer provided housing to the worksite and back each day.

158.    Plaintiff Guzman during the 2017 blueberry season did not have a driver's license.

159.    Pursuant to AWPA section 1841(b)(1) *et seq.* each agricultural employer, when using or causing to be used, any vehicle for providing transportation, shall: ensure that the vehicle conforms to the standards prescribed by the Secretary under paragraph (2) of this subsection and other applicable Federal and State safety standards; ensure that each driver

has a valid and appropriate license, as provided by State law, to operate the vehicle; and have an insurance policy or liability bond that is in effect which insures the agricultural employer against liability for damages to persons or property arising from ownership, operation, or causing to be operated, of any vehicle used to transport any migrant agricultural workers.

160.    Defendants, through their agent employee Antonio Sanchez caused a vehicle to be operated to transport other workers when it compelled Plaintiff Guzman to drive without a license and failed to provide confirmation of the vehicle safety standards maintenance and insurance.

161.    Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

162.    Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

163.    Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

### COUNT IX
### Violations of the AWPA – Violations of the obligation to pay wages when due
### 29 U.S.C. §1822(a)

164.    Plaintiffs, who were migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

165.     Defendants unlawfully deducted Plaintiffs' wages for the recruitment and travel from North Carolina to Michigan, for the false identification that he charged them for, and for rent of the substandard employer-provided housing in Michigan.

166.   Pursuant to the AWPA section 1822(a), each agricultural employer which employs any migrant agricultural worker shall pay the wages owed to such worker when due.

167.   By making unlawful deductions to Plaintiffs' wages, Defendants did not pay the Plaintiffs all wages when due.

168.   Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

169.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

170.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

**COUNT X**
**Violations of the AWPA – Violations of housing requirements**
**29 U.S.C. §1823(a), 1823(b)(1)**

171.   Plaintiffs, who were or are migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

172.   Plaintiffs were put up in a house by Defendants' agent employee Antonio Sanchez when they arrived in Michigan from North Carolina.

173.   The employer provided housing was located at 1941 Cleveland Avenue, Wyoming, Michigan.

174.   Plaintiffs resided with thirty other workers in one house at 1941 Cleveland Avenue. The only two female workers brought to Michigan from North Carolina by Defendants' agent employee, Antonio Sanchez, had their own room but the remaining thirty other workers, including the Plaintiffs, all had to sleep on the floor throughout the rest of the

house because there were no beds provided. These thirty people had to share one bathroom and one kitchen.

175.   Pursuant to AWPA Sections 1823(a) and 1823(b)(1), each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing; and that no **person** who owns or controls any such facility or property shall permit it to be occupied by any **migrant agricultural worker** unless a copy of the certification of occupancy is posted at the site.

176.   Plaintiffs were forced to live in substandard, overcrowded, and unsafe housing provided by the Defendants while they worked on Defendants' blueberry farm and no occupancy posting or certificate of safety compliance was posted at the site.

177.   Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

178.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

179.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

**COUNT XI**
**Violations of the AWPA – Violations of the notice posting requirements**
**29 U.S.C. §1821(g)**

180.   Plaintiffs, who were or are migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

181. The AWPA requires that written disclosures be made available to migrant agricultural workers in a language common to the workers, for anyone not fluent or literate in English. (29 C.F.R. §500.78).

182. When Defendants failed to provide written disclosures, they also failed to provide written disclosures or any meaningful explanation of their work arrangement under the AWPA in a language that Plaintiffs could understand.

183. Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

184. Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

185. Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

<u>**COUNT XII**</u>
**Violations of the AWPA – Violations of the working arrangement**
29 U.S.C. § 1822(c)

186. Plaintiffs, who were or are migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

187. Under the AWPA, no agricultural employer "shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association" with any migrant or seasonal agricultural worker. 29 U.S.C. § 1822(c); 29 U.S.C. § 1832(c)

188. The AWPA creates a private right of action for any person aggrieved by a violation. *Id.* § 1854(a).

189. The working arrangement between Plaintiffs and similarly situated persons and Defendants implied that the Defendants would follow federal and state housing labor codes and standards.

190. Pursuant to Michigan Administrative Code R. 325.3615(4)(c)(iii), Defendants were obligated to provide not less than 100 square feet of floor space per individual residing in the housing units they leased or controlled.

191. Defendants violated Mich. Admin. Code. R. §325.3615(4)(c)(iii) and 29 U.S.C. § 1822(c) by housing more than thirty individuals in a house of less than 3,000 square feet.

192. Pursuant to Michigan Administrative Code R. 325.3615(10), Defendants were required to provide sufficient bed space consisting of comfortable, rigidly supported beds, cots, or bunks with clean mattresses to Plaintiffs.

193. Defendants violated Mich. Admin. Code R. 325.3615(10) and 29 U.S.C. § 1822(c)by requiring Plaintiffs to sleep on the floor of their migrant housing unit without providing a mattress, cot bunk, or bed.

194. Pursuant to Michigan Administrative Code R. 325.3623(3), "when, within a shelter, food is prepared and consumed by an individual other than the migratory laborer or the laborer's family members, the size of the facility shall be commensurate to the capacity of the camp."

195. Defendants violated Mich. Admin. Code R. 325.3623(3) and 29 U.S.C. § 1822(c) by only providing one kitchen for Plaintiffs to share with approximately thirty other individuals which did not permit Plaintiffs to reasonably access or make use of the kitchen facilities.

196.    Pursuant to Mich Admin Code R 325.3627(2), any entity which leases, owns, or controls migrant housing must provide a toilet or privy seat in the ratio of at least one unit for each fifteen individuals it serves.

197.    Defendants violated Mich. Admin. Code R. 325.3627(2) and 29 U.S.C. § 1822(c) by providing only one toilet for the approximately twenty-eight male individuals, including Plaintiffs, in the migrant housing where Plaintiffs were placed.

198.    Plaintiffs suffered actual damages as a result of Defendants' violations of the AWPA.

199.    Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

200.    Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

...

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully demand a jury trial and pray that this Honorable Court:

(a) Grant declaratory relief that Defendants have violated the rights of Plaintiffs;

(b) Award Plaintiffs all damages available under the TVPA and TVPRA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with but not limited to actual damages, punitive damages and reasonable attorneys' fees for Defendants' violations of the TVPA and TVPRA.

(c) Award Plaintiffs all damages available under the AWPA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with other actual damages and punitive damages for Defendants' violations of:

    a. The working arrangement;

    b. The transportation requirements;

    c. The Notice and written disclosure requirements;

    d. The due date for wage payments requirement;

    e. The misrepresentation prohibition regarding employment terms and conditions;

    f. The disclosure in the appropriate language requirement;

    g. The housing requirements;

    h. The breach of the working arrangement with Plaintiffs; and

    i. The payroll accurate information requirement.

(d) Grant such other relief as this Court deems equitable, just, and proper.

Dated: June 9, 2023                Respectfully Submitted,

**MICHIGAN IMMIGRANT RIGHTS CENTER**
*/s/* Gonzalo Peralta
Gonzalo Peralta (P84529)
gperalta@michiganimmigrant.org
1500 E. Beltline Ave. SE, Suite 300
Grand Rapids, MI 49506
Telephone: (734) 519-5763
Facsimile: (734) 519-5763

**FARMWORKER JUSTICE**

_/s/_ Trent R. Taylor
Trent R. Taylor (OR Bar No. 196045)
ttaylor@farmworkerjustice.org
1126 16th Street NW, Suite LL101
Washington, DC 20006
Telephone: (614) 584-5339
Facsimile: (202) 293-5427

**FARMWORKER LEGAL SERVICES**
/s/ Dorian Slaybod
Dorian Slaybod (MI P84095)
dslaybod@farmworkerlaw.org
1500 E. Beltline Ave. SE, Suite 300
Grand Rapids, MI 49506
Telephone: (269) 492-7190

*Plaintiffs' Counsel*