**THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | | |
|---|---|---|
| FELICIANO VELASCO ROJAS and LUIS GUZMAN ROJAS,<br>    Plaintiffs,<br>v.<br><br>FIRST PICK FARMS LLC., FIRST PICK FARMS MANAGEMENT, LLC., HB HIVE and COMPANY, LLC., GROW BLUE FARMS, LLC., GROW BLUE FARMS HOURLY, LLC., and GROW BLUE FARMS SALARY, LLC.,<br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | **CIVIL COMPLAINT**<br><br>Civil Action<br>No: 1:23-cv-00604<br>Hon. Paul Moloney<br><br>JURY TRIAL DEMANDED |

## PLAINTIFFS' SECOND AMENDED COMPLAINT

1.     Plaintiffs Feliciano Velasco Rojas and Luiz Guzman Rojas bring this civil action against Defendants First Pick Farms, LLC ("First Pick Farms"), First Pick Farms Management, LLC ("First Pick Farms Management"), HB Hive and Company LLC, ("HB Hive"), and Grow Blue Farms, LLC ("Grow Blue Farms"), Grow Blue Farms Hourly, LLC ("Grow Blue Farms Hourly"), Grow Blue Farms Salary, LLC ("Grow Blue Farms Salary") (collectively "Defendant Enterprise" or "all six corporate Defendants" or "Defendants") for violations of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), the Trafficking Victims Protection Act ("TVPA"), and the Trafficking Victims Protection Reauthorization Act of 2003 and 2008 ("TVPRA") for agricultural work done on Defendants' blueberry farms located in West Olive, Michigan during the summer of 2017 and for being trafficked to perform  agricultural labor.

2.     Beginning in July of 2017 and continuing throughout the blueberry-growing season of the same year, all six corporate Defendants violated multiple provisions of the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. §§ 1801-1872 through

1

the corporate structure that existed while Plaintiffs were employed at Defendants' blueberry farm as migrant agricultural workers.

3.      While Plaintiffs were employed in North Carolina under the federal H-2A program that had provided them with nonimmigrant visas, Defendant Enterprise's employee without legal authority transported Plaintiffs from North Carolina to Michigan, compelling their labor through threats of force and serious harm including economic harm and abuse of legal process. 18 U.S.C. § 1589. Plaintiffs, two Mexican citizens, were victims of labor trafficking, involuntary servitude and forced labor as defined by the TVPA, 18 U.S.C. §§1581 *et seq.*, and the TVPRA, 22 U.S.C. §7101.

4.      Defendant Enterprise, through its agent and direct employee, Antonio Sanchez, recruited and transported Plaintiffs from their H-2A employment in North Carolina, with the wages and benefits of that federal program, to work and reside in poorer conditions at the Defendants' blueberry farm in West Olive, Michigan.

5.      The H-2A work in North Carolina remained available as evidenced by the large number of other H-2A workers that remained in North Carolina. The Defendant Enterprise's employee, by taking the Plaintiffs from North Carolina, took away Plaintiffs' H-2A protections and contractual benefits including the three-quarters guarantee. 20 C.F.R. 655.122(I).

6.      Defendant Enterprise compelled Plaintiffs to work under threatened abuse of the legal process by compelling Plaintiffs' use of false immigration documentation and threatening to call immigration authorities if Plaintiffs complained to anyone, including other persons working at the Defendants' blueberry farm. These threats which compelled Plaintiffs to work for Defendants began prior to their arrival in Michigan and were made by Defendants' agent and employee, Antonio Sanchez (hereinafter "Sanchez").

7.      Upon Plaintiffs' arrival in Michigan, Defendant Enterprise compelled Plaintiffs to work in grueling conditions picking blueberries for as many as twelve hours per day without breaks, seven days per week, and to live in woefully overcrowded and otherwise substandard housing arranged by the Defendants and for which they were required to pay rent.

8.      Plaintiffs seek redress from all six corporate Defendants jointly and severally for Defendants' violations of law, in the form of statutory or actual damages under the AWPA, and actual damages plus reasonable attorneys' fees under the TVPA and TVPRA.

## JURISDICTION AND VENUE

9.      This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. § 1331 (federal question), the Migrant and Seasonal Agricultural Worker Protection Act ("AWPA"), 29 U.S.C. § 1854(a) *et seq.*

10.      Pursuant to 18 U.S.C. § 1595 this Court has jurisdiction over civil claims brought by Plaintiffs for violations of the Trafficking Victims Protection Act ("TVPA") and the Trafficking Victims Protection Reauthorization Acts ("TVPRA").

11.      Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2) as this is the judicial district where all six corporate Defendants reside and in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

### Migrant Worker Plaintiffs

12.      Plaintiff Luiz Guzman Rojas ("Plaintiff Guzman" or "Mr. Guzman") is a Mexican national and a migrant farmworker who currently resides in North Carolina.

13.      Plaintiff Feliciano Velasco Rojas ("Plaintiff Velasco" or "Mr. Velasco") is a Mexican national and a migrant farmworker who currently resides in Florida.

14.    Plaintiffs are from impoverished areas of Mexico where there are few opportunities for paid employment. Plaintiffs traveled to the United States at considerable personal expense to support their families.

15.    Plaintiff Guzman is an individual from the state of Michoacan, Mexico and was exclusively employed by the Defendants from approximately June 2017 to September 2017.

16.    Plaintiff Velasco is an individual from the state of Oaxaca, Mexico and was exclusively employed by the Defendants from approximately June 2017 to August 2017.

17.    At all times relevant to this Complaint, Plaintiffs Guzman and Velasco were migrant agricultural workers pursuant to the AWPA 29 U.S.C. § 1802 (8) and 29 C.F.R. § 500.20(p).

18.    In May of 2017, the Plaintiffs entered the United States through the H-2A visa program to work in North Carolina along with a number of other Mexican nationals.

19.    Plaintiffs worked on Defendant Enterprise's blueberry farms in Michigan for one season from June 2017 through August of 2017 for Plaintiff Velasco and through September of 2017 for Plaintiff Guzman picking blueberries.

20.    While working for Defendant Enterprise, Plaintiffs held permanent places of residence in Mexico.

21.     Plaintiffs were housed by Defendant Enterprise at a migrant housing facility located at 1941 Cleveland Avenue, Wyoming, Michigan, 49509 ("1941 Cleveland Ave.") for the benefit of Defendants.

22.    At all times relevant to this action, Plaintiffs Guzman and Velasco were employed in agricultural employment under AWPA, 29 U.S.C. § 1802(3) and 29 C.F.R. §500.20(e), in that they were employed in the production, cultivation, growing, and harvesting of agricultural or

4

horticultural commodities and/or in work incident to or in conjunction with Defendant Enterprise's growing operations, including preparation for market.

**Defendants**

23.     Defendant First Pick Farms, LLC, which operates under the name "First Pick Farms" is a domestic corporate entity and agricultural employer under the AWPA which operates a farm that cultivates and harvests roughly 2,200 acres of blueberries located in West Olive, Nunica, Rothbury, and Covert, Michigan. First Pick Farms markets and sells fresh and frozen blueberries throughout Michigan. First Pick Farms operates its own packing facility which packs for other growers and employs roughly 100 packing workers during peak season. First Pick also employs roughly 700-800 migrant agricultural workers during peak season to harvest the blueberries, also another 100 seasonal agricultural workers for spraying, mowing, field maintenance and machine harvesting.

24.     All six corporate Defendants are overlapping agricultural operations and holding companies that are owned or controlled by the same operators and corporate officers.

25.     All six corporate Defendants conduct business from the same rural address of 14786 Winans St., West Olive, Michigan, 49460 ("14786 Winans").

26.     All six corporate Defendants share profit and loss from the venture of growing, harvesting, and selling blueberries.

27.     Defendants collectively do business as First Pick Farms.

28.     Defendant First Pick Farms Management, LLC ("First Pick Farms Management") is a domestic corporate entity operating under the name "First Pick Farms" and affiliated with Defendant First Pick Farms, LLC.

29. Defendant HB Hive and Company, LLC ("HB Hive") is a domestic corporate entity doing business as "First Pick Farms" and affiliated with Defendant First Pick Farms, LLC.

30. First Pick Farms provides on their corporate website that HB Hive and Company, LLC is "d/b/a First Pick Farms 14786 Winans, West Olive, MI 49460."

31. Defendant HB Hive is a limited liability company which was owned in 2017 by GBF Corporation, LLC, which was, in turn, owned during 2017 by Tom Mitchell.

32. Defendant Grow Blue Farms, LLC is a foreign corporate entity doing business as "First Pick Farms" and affiliated with Defendant First Pick Farms, LLC.

33. Defendant Grow Blue Farms Hourly, LLC is a domestic corporate entity doing business from 14786 Winans with registered agent Scott Nagelvoort, who also serves as the Chief Executive Officer of Defendant First Pick Farms, LLC.

34. Defendant Grow Blue Farms Salary, LLC is a domestic corporate entity doing business from 14786 Winans with registered agent Scott Nagelvoort, who also serves as the Chief Executive Officer of Defendant First Pick Farms, LLC.

35. Defendants Grow Blue Farms, Grow Blue Farms Hourly, Grow Blue Farms Salary, and First Pick Farms all also share the same registered office mailing address: 937 Bay Ridge Drive, Holland, MI 49424.

36. Defendants HB Hive registered office mailing address is 14786 Winans Street, the same rural address where all six corporate Defendants conduct their business.

37. In 2017, Tom Mitchell owned and operated First Pick Farms, First Pick Farms Management, HB Hive, and Grow Blue Farms.

38.     Upon information and belief, Grow Blue Farms Hourly and Grow Blue Farms Salary have the ability to provide relief to the employees affected by violations committed by Defendant Enterprise prior to 2021.

39.     All six Defendants: First Pick Farms, First Pick Farms Management, HB Hive, and Grow Blue Farms, Grow Blue Farms Hourly, and Grow Blue Farms Salary, (collectively "Defendant enterprise", or "all six corporate Defendants" or "Defendants"), are registered and operate out of the 14786 Winans address with overlapping officers and shared benefit and risk associated with the harvest and sale of blueberries. .

40.     Defendants, save for Defendant Grow Blue Farms, are all Michigan for-profit corporations, and all six corporate defendants are qualified to operate in Michigan.

41.     Defendant Grow Blue Farms is a Delaware corporation qualified to operate in Michigan.

42.     Defendants First Pick Farms, Grow Blue Farms Hourly, and Grow Blue Farms Salary are all wholly owned subsidiaries of Grow Blue Farms.

43.     All six corporate Defendants operate and benefit financially from blueberry farm operations at 14786 Winans St., West Olive, Michigan, 49460 where they produce fresh and frozen blueberries.

44.     Defendant Grow Blue Farms owns, operates, controls and/or contracts for migrant housing in Van Buren, Oceana, Berrien, Kent, and Ottawa counties in Michigan for its workforce for the benefit of the Defendant Enterprise.

45.     Defendants share the same officers and directors, including Registered Agent Jennifer Crawford and President Scott Nagelvoort.

46.    All six corporate Defendants are a single employer under the AWPA as they are an integrated enterprise.

47.    Defendant Enterprise authorized its agents and employees, including Sanchez, to house incoming work crews.

48.    Defendant Enterprise housed Plaintiffs at 1941 Cleveland Ave.

49.    At all times relevant to this Complaint, Defendant Enterprise was the employer of Plaintiffs under the AWPA, 29 U.S.C. § 1802(5), which determined the terms and conditions of Plaintiffs' employment, including their work hours, schedules, manner of performance, timekeeping, and housing, among other essential functions of an employer.

50.    Specifically, at all relevant times, Defendant Enterprise's employees regularly and recurrently handled or otherwise worked on goods, moved in or produced for commerce, including but not limited to harvesting blueberries for sale. In addition, Defendant Enterprise's annual gross volume of sales or business was not less than five hundred thousand dollars ($500,000.00).

51.    At all times relevant to this action, Defendant Enterprise was the agricultural employers under AWPA, 29 U.S.C. § 1802(2), in that it owned or operated a farm, packing shed and/or nursery, and hired and employed the Plaintiffs and others as migrant or seasonal agricultural workers.

## FACTUAL ALLEGATIONS

### Trafficking

A. Recruitment and Trafficking

52.    Plaintiffs were H-2A agricultural workers from Mexico working on a farm in North Carolina prior to the blueberry season of 2017. In North Carolina, Plaintiffs lived in free

housing that was inspected and compliant with applicable standards. They earned a guaranteed contract wage for their hours worked and would have had the expense of return transportation to Mexico paid upon completion of their contract, which would have lasted several more months.

53.     After Plaintiffs had been working on a farm in North Carolina for a few weeks, Sanchez, working as Defendant Enterprise's agent and employee, woke the Plaintiffs and approximately thirty other H-2A workers at night to take their photographs.

54.     Plaintiffs and several other H-2A workers were told by Defendant Enterprise's agent and employee, Sanchez, that they would be taken to another farm to continue agricultural work in Michigan.

55.     Plaintiffs were given only two to three hours warning by Sanchez of the need to pack their belongings and board the vans to begin the trip to Michigan.

56.     Defendant Enterprise expected Sanchez and other field managers to deliver workers to them in Michigan during the 2017 season as they had in prior seasons.

57.     Sanchez worked as an employee of Defendant Enterprise wherein he recruited, transported, provided housing for, and supervised the Plaintiffs during the 2017 blueberry season at Defendant Enterprise's blueberry operation.

58.     Defendant Enterprise, through its agent and employee, Sanchez, repeatedly threatened Plaintiffs and the other H-2A workers with calls to immigration authorities if they complained to anyone regarding being transported to Michigan to work.

59.     Soon thereafter, Sanchez rounded up the individuals who he had photographed, including the Plaintiffs and required them to board vans. He then gave them false identification that had their respective photographs and false identification information, and then told them

that they were being relocated to a farm in Michigan where they would use the identity documents that he provided to them.

60.     Plaintiffs were forced to board buses and then were driven to West Olive, Michigan by Antonio Sanchez where they would work for the Defendant Enterprise.

61.     Plaintiffs and other H-2A workers were then given false identification while on the buses.

62.     Sanchez gave Plaintiff Guzman false identification documents with the name "Saul Chabez".

63.     Sanchez gave Plaintiff Velazco false identification documents with the name "Juan Guzman."

64.     Plaintiffs were fearful of Sanchez which is why they boarded the buses and used the false documents.

65.     Sanchez, acting directly in a venture with Defendant Enterprise, orchestrated the transportation of the Plaintiffs and the other individuals to Michigan while also charging them for the transportation costs along the way.

66.     Sanchez told the workers prior or during the trip to Michigan that he would charge the workers for the costs of transporting them from North Carolina to Michigan which included the costs of the false identification imposed on the Plaintiffs and other trafficked workers, approximately one hundred and ten dollars ($110.00) each, as well as charges purportedly for trip fuel costs for each passenger in the amount of twenty-five dollars ($25.00) each per refueling stop, of which there were ten stops.

67.     Plaintiffs and other workers were forced to repay Sanchez for the debt imposed by the aforementioned costs with their own money and labor.

10

68.    When Plaintiffs, the other H-2A workers, and Sanchez arrived in Michigan, Sanchez took them to a house located at 1941 Cleveland Ave., and informed the workers that this is where they would reside for the duration of the 2017 blueberry season.

69.    Plaintiffs resided at the Cleveland Ave. housing with approximately thirty workers in total.

70.    Defendant Enterprise held control over the house at 1941 Cleveland Ave., where the Plaintiffs resided at all relevant times in Michigan. This housing was unfurnished with fewer than 1,500 square feet of floor space, which was insufficient space for the approximately thirty workers that resided there for the relevant time period.

71.    Defendant Enterprise relied upon and benefited from the work of Harvest Manager, Scott Walker, regularly inspected housing where their migrant workforce resided, including the housing provided to Plaintiffs.

72.    On its premises in Michigan, Defendant Enterprise processed Plaintiffs' employment paperwork using the false identification provided to them by Sanchez.

73.    Defendant Enterprise employed and directed Sanchez, and relied upon Sanchez, to hire and transport part of its workforce in Michigan in 2017 as they had in prior years.

74.    Defendant Enterprise knowingly trafficked the Plaintiffs through the use of force, fraud, and/or coercion for the purpose of bringing a work crew to Defendants' blueberry farm through the direct acts of its employee and agent, Sanchez.

B.    <u>Defendants' Involvement in the Labor Trafficking</u>

75.    Defendant Enterprise hired and employed Sanchez during the 2017 blueberry season to act as field supervisor as they had done in previous seasons.

76.    Defendant Enterprise also employed Sanchez to act as a recruiter. Defendants knew or should have known about Sanchez' history of labor violations for which he was sanctioned by federal authorities prior to the 2017 growing season but employed him to act as a recruiter and a field supervisor.

77.    Defendant Enterprise paid Sanchez directly from company payroll as an employee in the same manner as it paid the Plaintiffs.

78.    As an agent and employee of Defendant Enterprise, Sanchez's actions as an agricultural recruiter and field supervisor were provided for the direct benefit of all six corporate Defendants' business operations.

79.    Defendant Enterprise communicated with or had a standing agreement for the employment of Sanchez such that he would provide some number of agricultural workers to work in Michigan for Defendants for the 2017 blueberry season.

80.    Defendant Enterprise hired and employed various supervisory individuals, including Sanchez, with the expectation that they would bring work crews as per their respective working arrangements.

81.    Defendant Enterprise controlled all aspects of the work of Sanchez, Plaintiffs, and other workers, including wages, hours, and discipline.

82.    Defendant Enterprise supplied all tools used to complete work, including buckets and scales, for Plaintiffs and Sanchez.

83.    Defendant Enterprise, as part of the hiring process for the 2017 blueberry season, required new workers, including the Plaintiffs, to fill out forms to verify their ability to work in the United States which used the false identities provided by Sanchez.

12

84.    Plaintiffs believed that through the acts of Sanchez, e.g. transporting them to Michigan; putting them in housing while working for Defendants' blueberry operation; ensuring that they were enrolled in the company payroll system, and supervising them while they worked during the 2017 blueberry season, that Sanchez was an agent of the six corporate Defendants.

C.   Method of Control, Form of Threats, and Abuse

85.    Upon arriving in Michigan, Sanchez threatened the Plaintiffs and other workers by saying that the immigration authorities would be alerted if any workers raised any complaints.

86.    Sanchez repeated similar threats throughout the work season: that he would alert immigration authorities to the Plaintiffs' whereabouts and the use of false identification if the Plaintiffs complained about their working conditions.

87.    Due to being compelled to accept and use the false identifying documentation after being transported away from their previous H-2A employer in North Carolina, thereby violating the terms of their H-2A visa and immigration status, the Plaintiffs were fearful of the legal repercussions if immigration authorities were called against them.

88.    Defendant Enterprise's agent, Sanchez, instructed Plaintiffs to use the false identifications imposed on the Plaintiffs in filling out the paperwork to begin their employment for Defendants.

89.    Defendant Enterprise reviewed and approved the employment documentation completed with the false identification documents imposed on the Plaintiffs by Sanchez and enrolled Plaintiffs in its company records under false aliases.

90.    Defendant Enterprise compelled Plaintiffs to work as much as twelve hours per day, seven days per week under brutal conditions while repaying Sanchez for the debt that he had imposed on them for transportation from North Carolina.

91.    Defendant Enterprise's agent, Sanchez, monitored Plaintiffs and the other workers to ensure that they did not divulge the details of the trafficking scheme including their true identities. This kept the Plaintiffs and other workers residing in the same overcrowded house while isolated and controlled by the Defendant Enterprise.

D. Financial Gain

92.    Defendant Enterprise, through the human trafficking initiated by its agent and employee, Sanchez, obtained a labor force for the picking of the blueberry harvest for its pecuniary gain.

93.    Defendant Enterprise, by securing a larger workforce, were able to more quickly and effectively pick crops and move them into the stream of commerce to its direct economic benefit.

94.    Defendant Enterprise, through Sanchez, deducted rent from Plaintiffs' wages for substandard housing which was of benefit to the employer.

95.    Plaintiffs would have been living in free, regulated housing in North Carolina at that time if they had they not been taken by Defendant Enterprise to Michigan.

96.    Sanchez also charged travel expenses to the workers for transporting them from the employer-provided housing to the fields where they worked for the benefit of the Defendant Enterprise.

**Agricultural Employment**

97.    Agricultural workers have historically been exploited which is why the federal government passed the Migrant and Seasonal Agricultural Worker Protection Act (AWPA) to

protect these susceptible groups of workers who travel long distances to pick the fruits and vegetables that form so much of the food supply.  29 U.S.C. 1801, *et seq.*

98.    The AWPA defines an agricultural employer as "any person who owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed, nursery, or seed production enterprise who recruits, solicits, hires, employs, furnishes, or transports migrant or seasonal agricultural workers." 29 U.S.C. §1802(2).

99.    The AWPA defines a migrant agricultural worker as an individual employed in "agricultural employment" of a seasonal or other temporary nature required to be absent overnight from his or her permanent place of residence. 29 C.F.R. §500.20(h)(3); 29 C.F.R. §500.20(s); 29 C.F.R. §500.20(p)(2).

100.    The AWPA defines agricultural employment broadly to include farming in all its branches, including the growing and harvesting of any agricultural or horticultural commodity which are those commodities which use agricultural techniques for cultivation, even if the commodity could be produced without human intervention. 29 C.F.R. 500.20(e).

101.    During the relevant time periods, Defendant Enterprise has grown and harvested blueberries on its premises.

102.    Defendant Enterprise has directly recruited and hired hundreds of workers each growing season and used its own employees to assist them to recruit, transport, and hire workers in order to grow and harvest crops on its West Olive, Michigan farm.

103.     Defendant Enterprise employed workers for whom they provided or contracted for provision of nearby housing.

15

104.    Defendant Enterprise hired Sanchez as a field supervisor during the 2017 blueberry season. Defendants hired Sanchez in prior years to provide a crew for previous blueberry seasons.

105.    Sanchez had no authority to negotiate the terms of his own employment contract nor the contracts of his crew.

106.    While Plaintiffs were lawfully working as H-2A workers at another farm in North Carolina, Sanchez ordered and transported Plaintiffs along with other workers to Michigan to pick blueberries.

107.    After preparing false identification for Plaintiffs, Sanchez drove Plaintiffs and thirty other H-2A workers from North Carolina to Michigan to work for Defendants.

108.    Plaintiffs were, at no time prior to their arrival in Michigan, provided with any written disclosures or documentation about the new job they would be compelled to perform in Michigan.

109.    Prior arrival in Michigan, Plaintiffs along with the other workers were promised simply a job that was better paying compared to the job that they were being taken from and that they would be picking blueberries. No other details about the job, duties or obligations were provided before the Plaintiffs actually began working for Defendant Enterprise's blueberry operation.

110.    Upon arriving in Michigan, Sanchez told Plaintiffs and other workers that they would be placed in a house located at 1941 Cleveland Ave. and told them that they would each have to pay rent in the amount of twenty dollars ($20.00) per week.

16

111.    Plaintiffs lived in that residential home with over thirty workers, all sharing living space as provided by Sanchez, which was done on behalf of employees to house Defendant Enterprise's workforce.

112.    At no point during their time living at 1941 Cleveland Ave., did the Plaintiffs see any signs or written notifications about the occupancy limits of their living quarters.

113.    Plaintiffs were not provided with any alternative housing options.

114.    Housing provided to Plaintiffs had fewer than 1,500 square feet of floor space and lacked any beds or other furnishings for the more than thirty migrant workers who resided there. Two women workers were given a bedroom to share while the remaining workers had to spread out throughout the rest of the house with no other option but to sleep on the floor. The house only contained one single toilet bathroom and one kitchen for the more than thirty workers to share. The bathroom could only accommodate one person at a time. The kitchen was modest in size and did not have the capacity for so many workers to have meaningful access to it.

115.    Defendant Enterprise failed to provide adequate housing to its migrant blueberry workers when it placed the Plaintiffs and other workers in an unfurnished, dilapidated, and overcrowded house wherein the approximately thirty migrant workers had to sleep on the floor; had to share one toilet; had to share one kitchen area; had less than fifty square feet of floor space per person for sleeping purposes; and had fewer than 100 square feet of floor space per person of living space.

116.    This housing had not been certified by the Michigan Department of Agriculture and Rural Development ("MDARD") that it met Federal and State health and safety standards by the appropriate federal, state, or local agency, as required for use by migrant agricultural workers. Plaintiffs did not see a posting of a certificate of compliance with Federal and State

health and safety standards and no such posting was provided. Plaintiffs did not see a posting at the housing site with a statement showing the terms and conditions of occupancy and no such posting was provided.

117.    Prior to Plaintiffs' commencement of work at Defendants' blueberry farm, Defendant Enterprise required Plaintiffs and other trafficked former H-2A workers to fill out paperwork using their fake documentation as issued by Defendants' agent employee, Sanchez. The day after arriving in Michigan, the thirty trafficked workers were taken to an office or warehouse space on the Defendants' property where Defendants' secretarial or administrative staff called up workers one at a time and asked the workers for their identification to fill out the employment paperwork. This employment paperwork was reviewed by Defendants' secretarial or administrative staff.

118.    For some workers, the Defendants initially rejected their identifications, and those workers, who were told that they could provide different identification, went to Sanchez— who was standing outside of the office space, who provided alternate identification information to re-present to Defendant Enterprise which were then accepted.

119.    Defendant Enterprise failed to provide the required written disclosures regarding employment and housing conditions to Plaintiffs prior to transporting Plaintiffs and prior to the beginning of the 2017 blueberry season.

120.    Sanchez coordinated with other employees of Defendants, including "Miguel" and "Pablo," for instructions to manage Plaintiffs' work in detail, including specific work locations, work schedule, and daily work review.

121.    Defendant Enterprise made all decisions related to Plaintiffs' blueberry job assignments, which included what location, crop, and rows they would be assigned to work in, and what specific tasks they would be assigned to complete.

122.     Defendant Enterprise provided all equipment, such as buckets for the workers, bins for the weighed blueberries, and weigh stations.

123.    Defendant Enterprise assigned Plaintiffs and the other blueberry workers their work schedules including controlling their starting and stop times.

124.    Defendant Enterprise tracked the quantity of blueberries each Plaintiff picked by weight which is reflected in their wage statements.

125.    Defendant Enterprise set and enforced production standards for Plaintiffs and blueberry workers and tracked each Plaintiffs' piece rate for all crop-related tasks.

126.    The work performed by Plaintiffs was repetitive and did not require a special set of skills or training.

127.    At no time during the 2017 blueberry season did the Plaintiffs see any signage or written notices stating that agricultural workers have rights in any areas where they worked.

128.    Plaintiff Luis Guzman was also assigned by Defendant Enterprise to be one of the drivers that would transport some of the about thirty other workers co-habiting at the employer provided housing located at 1941 Cleveland Ave. to the work site. Plaintiff Guzman did not have a United States driver's license during the 2017 blueberry season but was compelled to drive as part of his work assignment. Plaintiff Guzman was not paid for driving his co-workers to the worksite.

129.    Defendant Enterprise failed to provide transportation for the Plaintiffs and other workers that met federal safety standards to get from their employer-provided housing to the

work site because Defendants did not ensure that each driver had a valid driver's license for the type of vehicle to be driven, 29 U.S.C. 1841(b)(1)(B); 29 C.F.R. 500.100. In addition, Plaintiffs and other workers were unlawfully charged for gas and transportation expenses.

130.    Defendant Enterprise administered payroll with paystubs marked with "HB Hive and Company, LLC."

131.    Defendant Enterprise also providing Plaintiffs with daily piece rate scale receipts marked "First Pick Farms."

132.    Defendant Enterprise failed to include the number of hours worked by each Plaintiff in each paystub as required under the AWPA (29 C.F.R. §500.80(a)(3)). Defendant Enterprise further failed to itemize deductions including but not limited to payments for transportation costs.

133.    Defendant Enterprise failed to provide accurate records for wages paid to the Plaintiffs and the other blueberry workers as required under the AWPA (29 C.F.R. §500.80(d)).

134.    Defendant Enterprise failed to provide notifications about workplace safety or worker rights at the locations where Plaintiffs were tasked with working as required under AWPA. (29 C.F.R. §500.135(a)(3)).

135.     Defendant Enterprise used threats to prevent Plaintiffs from leaving the housing or work site and instructed Plaintiffs who they could and could not speak to, e.g. male workers were not to speak to or co-mingle with female workers.

136.    Following the 2017 blueberry season, during or near the month of September 2017, Defendants transported Plaintiffs and other workers back to North Carolina where the workers finally managed to escape employer control.

## COUNT I
### Violations of the TVPA – Forced Labor Against All Defendants
### (18 U.S.C. §§1589)

137.    Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

138.    Congress passed the Victims of Trafficking and Violence Protection Act in 2000 ("TVPA"). Pub. L. No. 106-386, 114 Stat. 1466 (2000) (codified as amendment in Title 22, Chapter 78, and Title 18, Chapter 77, of the U.S. Code.) The TVPA has been reauthorized several times in the years since.   Through its text and legislative history, Congress demonstrated a strong intent to provide a means of recovery for victims of labor exploitation by allowing them to pursue civil actions for human trafficking violations.

139.    The Trafficking Victim Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1590, *et seq.*, criminalizes labor trafficking, e.g. peonage, slavery, involuntary servitude, or forced labor. Separately §1595 of the TVPRA provides victims of labor trafficking with civil remedies against the perpetrators of human labor trafficking and also against the beneficiaries of labor trafficking. *See* 18 U.S.C. § 1595(a).

140.    18 U.S.C. § 1595(a) sets the standard for civil liability under the TVPRA. That section provides:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially, or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys' fees.

141.    Under the 2003 version of the 18 U.S.C. § 1595(a), only those criminally liable under 1590 could be held civilly liable under 1595. However, in 2008, U.S.C. § 1595(a) was intentionally amended with substantially different language that created a category of

21

defendants that could be held liable civilly even in the absence of criminal culpability. By amending 18 U.S.C. § 1595(a) in 2008, Congress required "whoever," (i.e. all businesses), to comply with the new law or face new civil liability. 18 U.S.C. § 1595(a). This amendment to the country's systemic human trafficking legislation necessitated an evolution from the business and commercial sector which for decades have enabled, empowered, harbored, held, facilitated, benefitted from financially or otherwise, and/or any combination of the foregoing from labor trafficking.

142.   Under the TVPRA and the TVPA, any individuals and/or entities are also civilly liable for a labor trafficking victim's damage if they: "(1) knowingly benefitted; (2) from participating in a venture; (3) that they knew or should have known engaged in forced labor." 18 U.S.C. § 1595(a).

143.   It is a violation of the TVPA to "knowingly provide or obtain the labor or services of a person… by means of serious harm threats of serious harm…; by means of the abuse of threatened abuse of the law or legal process; or by means of any scheme, plan, or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm…" 18 U.S.C. § 1589(a)

144.   The TVPA defines "serious harm" to include nonphysical harm, "including psychological, financial, or reputational harm, that is sufficiently serious… to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services to avoid incurring that harm. 18 U.S.C. 1589(c)(2).

145.   Defendant Enterprise, through its employees including its field supervisor Sanchez, knowingly and purposely obtained the labor of Plaintiffs by threats of abuse of the legal process and restraint against the Plaintiffs and other persons.

22

146.   Defendant Enterprise through its employees knowingly provided and/or obtained Plaintiffs' labor and services by means of a scheme, plan, or pattern intended to cause Plaintiffs to believe that if they did not perform such labor or services, Plaintiffs would suffer legal consequences, harm, or physical restraint.

147.   Defendant Enterprise compelled Plaintiffs to work the blueberry fields for exorbitant hours by threatening abuse of the legal process. Defendant Enterprise exploited the Plaintiffs' vulnerability and directed, assisted, conspired, or acted in concert with each other to create and perpetuate a system of peonage and forced labor prohibited by 18 U.S.C. §1590.

148.   Defendant Enterprise, through its employees, used threats of abusing the legal process, threatened to call immigration authorities if Plaintiffs complained about the working conditions, which was a pattern of threats and abuse to cause Plaintiffs to believe that failure to obey would cause Plaintiffs and/or their families back in Mexico to suffer serious harm.

149.   Plaintiffs suffered and continue to suffer emotional distress and financial distress due to Defendants' coercive and fraudulent tactics resulting in their forced labor and trafficking.

150.   Plaintiffs are entitled to an award of compensatory and punitive damages, in an amount to be determined at trial, as well as reasonable attorneys' fees, and costs for the wrongful conduct of Defendants.

## COUNT II
### Violations of the TVPA – Forced Labor Against All Defendants
### (18 U.S.C. §§1589(b))

151.   Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

152.   It is a violation of the TVPA to "knowingly benefit" from participation in a venture which obtains labor in violation of the TVPA, while "knowing or in reckless disregard of the fact" that the venture has obtained labor through such means. 18 U.S.C. 1589(b)

153.   Defendant Enterprise knew or was reckless in not knowing that their employee and field supervisor, Sanchez, had used coerced transportation and threats of abuse of the legal system, physical harm, and restraint to traffic the Plaintiffs and other workers on Sanchez's crew to cause Plaintiffs to provide labor and services at Defendants' blueberry farm. This conduct kept the Plaintiffs controlled and overseen creating an air of fear.

154.   Defendant Enterprise, through its employees, benefitted financially from the forced labor provided by Plaintiffs in working Defendant Enterprise's blueberry farms.

155.   Plaintiffs suffered injuries and damages as a result of Defendant Enterprise's actions.

156.   Plaintiffs are entitled to an award of compensatory and punitive damages, in an amount to be determined at trial, as well as reasonable attorneys' fees, and costs for the wrongful conduct of all six corporate Defendants.

## COUNT III
### Violations of the TVPA – Forced Labor Against All Defendants
### (18 U.S.C. §§1590(a))

157.   Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

158.   It is a violation of the TVPA to "knowingly, recruit, transport, provide, or obtain by any means, any person for labor or services in violation of" the TVPA.

159.    Defendant Enterprise knowingly and purposefully recruited the Plaintiffs as described herein, in violation of the TVPA.

160.    Defendant Enterprise knowingly and purposefully transported Plaintiffs in violation of the TVPA.

161.    Defendant Enterprise, through its agent/employee, Sanchez, when he transported the Plaintiffs along with approximately twenty-eight other individuals from North Carolina to Michigan to work at Defendants' blueberry operation.

162.    Defendant Enterprise knowingly and purposefully provided the labor of Plaintiffs as described herein, in violation of the TVPA.

163.    Defendant Enterprise, through its agent/employee, Sanchez, knowingly provided the Plaintiffs and others to serve as Defendants' workforce on its blueberry farms.

164.    Defendant Enterprise knowingly and purposefully obtained the labor of Plaintiffs as described herein, in violation of the TVPA.

165.    Defendant Enterprise, through its agent/employee, Sanchez, knowingly obtained the Plaintiffs and others to pick blueberries on its farms during the 2017 blueberry season.

166.    Plaintiffs suffered damages as a direct and proximate result of the Defendants' conduct. These damages include, but are not limited to, loss of future earnings related to their forced withdrawal from the H-2A hiring system, as well as emotional distress damages.

167.    Plaintiffs are entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorneys' fees and costs of this action.

**COUNT IV**
**Violations of the TVPA – Forced Labor Against All Defendants**
**(18 U.S.C. §§1594(a))**

168.    Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

169.    Attempts to violate the TVPA are themselves violations of the TVPA. 18 U.S.C. 1594(a).

170.    All six corporate Defendants attempted to violate 18 U.S.C. 1589 and 1590 described herein.

171.    All six corporate Defendants knew or should have known that Plaintiffs were transported from out of state, were provided false identification, housed in deplorable conditions, and subject to forced labor without safe alternatives.

172.    Plaintiffs suffered damages as a direct and proximate result of Defendant Enterprise's conduct, e.g. hiring known recruiters such as Sanchez to bring workers to Michigan. These damages include, but are not limited to, loss of future earnings related to their forced withdrawal from the H-2A hiring system, as well as emotional distress damages.

173.    Plaintiffs are entitled to compensatory and punitive damages and restitution in amounts to be determined at trial, together with reasonable attorneys' fees and the costs of this action.

## COUNT V

### Violations of the AWPA - Misrepresentation of terms and conditions
### 29 U.S.C. §1821(f)

174.    Plaintiffs reallege and incorporate the allegations set forth above as if fully set forth herein.

175.    At all times relevant to this Complaint, all six corporate Defendants have constituted "agricultural employers" within the meaning of the AWPA. See 29 U.S.C. § 1802(2), and jointly employed Plaintiffs in a unified business operation that acted as a single enterprise.

176.    At all times relevant to this Complaint, Plaintiffs have been "migrant agricultural worker[s]" within the meaning of 29 U.S.C. § 1802(8) and employed for the benefit of all six corporate Defendants.

177.    The AWPA creates a private right of action for any person aggrieved by a violation. 29 U.S.C. § 1854(a).

178.    Defendant Enterprise violated the AWPA, 29 U.S.C. 1821(f), by failing to provide information as well as providing false and misleading information to Plaintiffs concerning the terms, conditions, or existence of agricultural employment required to be disclosed.

179.    When Plaintiffs were forcibly transported from North Carolina to work for the benefit of the Defendant Enterprise's blueberry farms, Defendant Enterprise failed to give information regarding the basis for their wages, piecework basis, numbers of hours to be worked, and withholdings.

180.    Defendant Enterprise omitted the information required to be disclosed by the AWPA to migrant agricultural workers like the Plaintiffs and this omission was tantamount to a misrepresentation of the required disclosures.

181.    Plaintiffs have attempted to resolve this issue with Defendants by sending a demand letter to the address listed in Defendants' corporate filings on March 15, 2023, but have been unsuccessful to date.

## COUNT VI
### Violations of the AWPA – Written Disclosures Requirement
### 29 U.S.C. §1821(a)(1-7)

182.  Plaintiffs, who were or are migrants under the AWPA reallege and incorporate the allegations set forth above as if fully set forth herein.

183.  Defendant Enterprise recruited Plaintiffs by force, fraud, and coercion, through its agent employee, Antonio Sanchez prior to each Plaintiff's commencement of work for Defendants.

184.  Prior to transporting Plaintiffs from North Carolina to Michigan, Defendant Enterprise's agent employee, Sanchez, provided only limited and vague oral information on their destination: Michigan; and only limited description of the types of crops the Plaintiffs would be picking: blueberries. No written disclosures were provided prior to Plaintiffs being taken to Michigan.

185.   Pursuant to 29 U.S.C. § 1821, Defendant Enterprise was required to provide written disclosures to Plaintiffs at the time of their recruitment, containing certain specific information about the conditions of their employment, including but not limited to the place of employment, the crops and types of activities that the worker will be employed on, the wage rate to be paid, the period of employment, and the entity to be informed if the worker suffers an on-the-job injury.

186.  At all times relevant to this Complaint, Defendant Enterprise failed to provide Plaintiffs with the written disclosures required by Section 1821 of the AWPA, either independently by themselves or through their agent employee.

187.   Plaintiffs have been harmed by Defendant Enterprise's failure to act in this respect, as they have not been provided with the appropriate information necessary to ascertain whether they have been paid all the wages they have earned or to redress their underpayment of wages.

188.   Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

189.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

190.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

## COUNT VII
**Violations of the AWPA – Violations of the recordkeeping requirements
29 U.S.C. §1821(d)**

191.   Plaintiffs, who were or are migrant under the AWPA, reallege the above paragraphs as though set forth fully herein.

192.   Pursuant to AWPA section 1821(d), each farm labor contractor, agricultural employer, and agricultural association which employs any migrant agricultural worker shall, with respect to each worker, make, keep, and preserve records for three years of the following information: basis on which wages are paid; number of piecework units earned; the number of hours worked; the total pay period earnings; the specific sums withheld and purpose of those withholdings; and net pay, and provide each worker for each pay period an itemized written statement of the information required. 29 U.S.C. § 1821(d).

29

193.   Defendant Enterprise issued Plaintiffs paystubs and maintained pay records that do not include an accurate hourly rate as obligated by the Act.

194.   Defendant Enterprise violated 29 U.S.C. 1821(d) by failing to provide recordkeeping with regard to the hours worked by migrant agricultural workers such as the Plaintiffs.

195.   Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

196.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

197.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

### COUNT VIII
**Violations of the AWPA – Violations of the transportation requirements**
**29 U.S.C. §1841(b)(1)(A), §1841(b)(1)(B), and §1841(b)(1)(C)**

198.   Plaintiffs, who were migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

199.   Plaintiff Luis Guzman was obligated by Defendant Enterprise's agent employee Sanchez to drive a van to transport workers from their employer provided housing to the worksite and back each day.

200.   Plaintiff Guzman during the 2017 blueberry season did not have a driver's license.

201.   Pursuant to AWPA section 1841(b)(1), each agricultural employer:

[w]hen using or causing to be used, any vehicle for providing transportation, shall: ensure that the vehicle conforms to the standards prescribed by the Secretary under

30

paragraph (2) of this subsection and other applicable Federal and State safety standards; ensure that each driver has a valid and appropriate license, as provided by State law, to operate the vehicle; and have an insurance policy or liability bond that is in effect which insures the agricultural employer against liability for damages to persons or property arising from ownership, operation, or causing to be operated, of any vehicle used to transport any migrant or seasonal agricultural worker. 29 U.S.C. § 1841

202.   Defendant Enterprise through its agent employee Sanchez caused a vehicle to be operated to transport Plaintiffs and other workers when it compelled Plaintiff Guzman to drive without a license and failed to provide confirmation of the vehicle safety standards maintenance and insurance.

203.   Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

204.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

205.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

**<u>COUNT IX</u>**
**Violations of the AWPA – Violations of the obligation to pay wages when due**
**29 U.S.C. §1822(a)**

206.   Plaintiffs, who were migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

207.    Defendant Enterprise unlawfully took deductions from Plaintiffs' wages for the transportation costs stemming from travel from North Carolina to Michigan; for the false identification that he charged them for; daily fees for purported transportation to and from the seasonal residence to the work sites; for rent of the substandard employer-provided housing

in Michigan; and Plaintiff Guzman was not paid for his role as driver for the workers to and from the worksite to the seasonal residence.

208.   Plaintiff Guzman was also tasked with driving a vehicle to transport other workers to the worksite but was unpaid for this job responsibility which was for the benefit of the employer.

209.   Pursuant to the AWPA section 1822(a), each agricultural employer which employs any migrant agricultural worker shall pay the wages owed to such worker when due. 29 U.S.C. § 1822(a).

210.   By making unlawful deductions to Plaintiffs' wages, Defendant Enterprise did not pay the Plaintiffs all wages when due.

211.   Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

212.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

213.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

### COUNT X
**Violations of the AWPA – Violations of housing requirements**
**29 U.S.C. §1823(a), 1823(b)(1)**

214.   Plaintiffs, who were or are migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

215.   Defendant Enterprise placed Plaintiffs in a house through agent employee Sanchez when they arrived in Michigan from North Carolina.

216.   The employer-provided housing was located at 1941 Cleveland Ave.

217.    Plaintiffs resided with approximately thirty other workers in one house at 1941 Cleveland Ave. The only two female workers brought to Michigan from North Carolina by Defendants' agent employee, Sanchez, had their own room but the remaining thirty other workers, including the Plaintiffs, all had to sleep on the floor throughout the rest of the house because there were no mattresses, cots, bunks, or beds provided. These thirty people had to share one single-toilet bathroom and one kitchen. This housing had fewer than 1,500 square feet of floor space.

218.    Pursuant to AWPA Sections 1823(a) and 1823(b)(1), each person who owns or controls a facility or real property which is used as housing for migrant agricultural workers shall be responsible for ensuring that the facility or real property complies with substantive Federal and State safety and health standards applicable to that housing; and that no person who owns or controls any such facility or property shall permit it to be occupied by any migrant agricultural worker unless a copy of the certification of occupancy is posted at the site.

219.    Plaintiffs were forced to live in substandard, overcrowded, and unsafe housing provided for the economic benefit of the Defendant Enterprise while they worked on its blueberry farm and no occupancy posting or certificate of safety compliance was posted at the site.

220.    Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

221.    Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

222.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

## COUNT XI
**Violations of the AWPA – Violations of the posting requirements**
**29 U.S.C. §1821(b)**

223.   Plaintiffs, who were or are migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

224.   The AWPA requires that employers post disclosures of workers' rights under the AWPA in common areas so that they are available to migrant agricultural workers in a language common to workers, or anyone not fluent or literate in English. 29 C.F.R. §500.78.

225.   Defendant Enterprise failed to list or post any notifications regarding workers' rights in any of the locations where Plaintiffs were tasked with job responsibilities, either at the blueberry fields or at the weigh station.

226.   Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

227.   Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

228.   Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

## COUNT XII
**Violations of the AWPA – Violations of the working arrangement**
**29 U.S.C. § 1822(c)**

229.   Plaintiffs, who were or are migrant workers under the AWPA, reallege and incorporate the allegations set forth above as if fully set forth herein.

230.    Under the AWPA, no agricultural employer "shall, without justification, violate the terms of any working arrangement made by that contractor, employer, or association" with any migrant or seasonal agricultural worker. 29 U.S.C. § 1822(c); 29 U.S.C. § 1832(c).

231.    The AWPA creates a private right of action for any person aggrieved by a violation. 29 U.S.C. § 1854(a).

232.    The working arrangement between Plaintiffs and similarly situated persons and Defendant Enterprise implied that the Defendants would follow federal and state housing labor codes and standards.

233.    Pursuant to Michigan Migrant Labor Camp Rules, Defendant Enterprise was obligated to provide not less than 100 square feet of floor space per individual residing in the housing units they leased or controlled.  Mich Admin. Code R. 325.3615(4)(c)(iii).

234.    Defendant Enterprise violated the Michigan Migrant Labor Camp Rues, and subsequently the AWPA, by housing more than thirty individuals in a house of less than 1,500 square feet. Mich. Admin. Code. R. §325.3615(4)(c)(iii); 29 U.S.C. § 1822(c).

235.    Pursuant to Michigan Administrative Code R. 325.3615(10), Defendant Enterprise was required to provide sufficient bed space consisting of comfortable, rigidly supported beds, cots, or bunks with clean mattresses to Plaintiffs.

236.    Defendant Enterprise violated Mich. Admin. Code R. 325.3615(10) and 29 U.S.C. § 1822(c)by requiring Plaintiffs to sleep on the floor of its migrant housing unit without providing a mattress, cot, bunk, or bed.

237.    Pursuant to Michigan Migrant Labor Camp Rules, "when, within a shelter, food is prepared and consumed by an individual other than the migratory laborer or the laborer's

35

family members, the size of the facility shall be commensurate to the capacity of the camp." Mich Admin. Code R. 325.3623(3).

238. Defendant Enterprise violated Mich. Admin. Code R. 325.3623(3) and 29 U.S.C. § 1822(c) by only providing one kitchen for Plaintiffs to share with approximately thirty other individuals which did not permit Plaintiffs to reasonably access or make use of the kitchen facilities.

239. Pursuant to Mich Admin Code R 325.3627(2), any entity which leases, owns, or controls migrant housing must provide a toilet or privy seat in the ratio of at least one unit for each fifteen individuals it serves.

240. Defendant Enterprise violated Mich. Admin. Code R. 325.3627(2) and 29 U.S.C. § 1822(c) by providing only one toilet for the approximately twenty-eight male individuals, including Plaintiffs, in the migrant housing where Plaintiffs were placed.

241. Plaintiffs suffered actual damages as a result of Defendant Enterprise's violations of the AWPA.

242. Plaintiffs are entitled to statutory or actual damages, whichever is greater, for each violation of the AWPA.

243. Plaintiffs have attempted to resolve this issue with Defendants but have been unsuccessful to date.

...

## PRAYER FOR RELIEF

WHEREFORE Plaintiffs respectfully demand a jury trial and pray that this Honorable Court:

(a) Assume jurisdiction over this action;

(b) Grant Plaintiffs a trial by jury on all such issues so triable;

36

(c) Grant declaratory relief that all six corporate Defendants, by the acts or omissions described above, have violated the rights of Plaintiffs;

(d) Award Plaintiffs all damages available under the TVPA and TVPRA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with but not limited to actual damages, punitive damages and reasonable attorneys' fees and costs for all six corporate Defendants' violations of the TVPA and TVPRA.

(e) Award Plaintiffs all damages available under the AWPA in an amount that is fair, just and reasonable, including but not limited to statutory damages and actual damages for past, present and future medical expenses, wage loss, physical and emotional distress, mental anguish, humiliation and embarrassment, together with other actual damages and punitive damages for Defendants' violations of:

    a.  29 U.S.C. §1821(f), for misrepresentation of the terms and conditions of employment;

    b.  29 U.S.C. §1821(a), for failure to provide required disclosures of the terms and conditions of employment;

    c.  29 U.S.C. §1821(d), for failure to comply with recordkeeping requirements;

    d.  29 U.S.C. §1841(b), for failure to comply with transportation requirements;

    e.  29 U.S.C. §1822(a), for failure to pay wages when due;

    f.  29 U.S.C. §§1823(a) and 1823(b) for failure comply with housing requirements;

    g.  29 U.S.C. §1821(b) for failure to provide a job site posting; and

    h.  29 U.S.C. §1822(c) for violations of the working arrangement.

(f)  Grant such other relief as this Court deems equitable, just, and proper.

Dated: March 16, 2024                          Respectfully Submitted,

**MICHIGAN IMMIGRANT RIGHTS CENTER**
*/s/* Gonzalo Peralta
Gonzalo Peralta (P84529)
gperalta@michiganimmigrant.org
1500 E. Beltline Ave. SE, Suite 300
Grand Rapids, MI 49506
Telephone: (734) 519-5763
Facsimile: (734) 519-5763

**FARMWORKER JUSTICE**
*/s/* Madeline Flynn
Madeline Flynn (DC Bar No. 90017739)
mflynn@farmworkerjustice.org
1126 16th Street NW, Suite LL101
Washington, DC 20006
Telephone: (202) 800-2523

**FARMWORKER LEGAL SERVICES**

/s/ Dorian Slaybod
Dorian Slaybod (MI P84095)
dslaybod@farmworkerlaw.org
1500 E. Beltline Ave. SE, Suite 300
Grand Rapids, MI 49506
Telephone: (269) 492-7190

*Plaintiffs' Counsel*